No. 338

First Circuit

ROBERTSON ET AL. v. POURCIEAU

(November 10, 1928. Opinion and Decree.)

Bouanchaud and Kearney, of New Roads, attorneys for plaintiff, appellee.

M. T. Hewes, of New Roads, attorney for defendant, appellant.

MOUTON, J. Plaintiffs, alleging that they sold 19,706 feet of lumber to defendant, demand a balance against him of $396.00, with legal interest from April 9, 1927. The defense is, in substance, that defendant bought 100,000 feet of lumber to be delivered at his mill according to specified grades and prices; that although plaintiffs had in their yard at their mill a sufficient amount of lumber to comply with their contract, they have wilfully refused to deliver a portion thereof to which defendant was entitled and have thus actively violated their agreement; that as a result of this violation of the contract, defendant has suffered damages in the sum of $1155.15.

The defendant admits owing a balance of $350.95 on the account, but avers that he refused to pay that amount which he is holding as a set off and partial payment of the sum he is claiming in reconvention.

Plaintiffs and defendant had several interviews in reference to the agreement for the lumber. At the fourth conference, it was finally agreed, that plaintiffs would deliver to defendant 100,000 feet of lumber which they were to manufacture from logs in their yards. The lumber was to be seventeen per cent tank, forty per cent select and forty-three per cent common.

Fifty-three thousand seven hundred and ninety feet of the lumber were delivered, and upon receiving a note from defendant

to discontinue delivery, plaintiffs ceased to deliver. After receiving this note plaintiffs asked payment of the sum of $725.15 from defendant which he declined to pay though he had made three payments for lumber previously delivered. Upon defendant refusing to pay, a contention arose between the parties in reference to the ownership of the lumber, defendant claiming that he was the owner of 100,000 feet by virtue of a purchase, and plaintiffs contending to the contrary.

David Robertson, one of the plaintiffs who graded the lumber and loaded it for defendant's mill, says that plaintiffs had a mere order from defendant to deliver 100,000 feet of lumber with the distinct understanding that defendant had the right to stop further delivery of the lumber whenever he saw fit, with the same right being reserved to plaintiffs.

W. F. Robertson, father of David Robertson, testifies that such was the condition of the agreement. He says, when the agreement was made his son in giving reasons for the reservation, said it should be mutual, otherwise it would be a one-sided arrangement.

On his first examination defendant said he did not recall that plaintiffs had reserved this right to cancel the contract. He says the only reservation he (defendant) made was that he would have the right to cancel if the lumber was not graded according to the Louisiana Cypress Rules. When the parties entered into the agreement the only persons present were the two plaintiffs and defendant. Although defendant merely says that he does not recall if plaintiffs made the reservation, it may be implied that his answer carried a denial that any such condition was agreed to in the contract. However that may be, we have here the testimony of two witnesses against the evidence of one on that question, with no fact or circumstance in the record suggestive of any prevarication on the part of these plaintiffs.

No doubt, the lower court believed these witnesses, and we find no ground upon which we might base a disbelief in their credibility.

Defendant first refused to pay, claiming that the lumber was burdened with a mechanic's lien. Plaintiffs forthwith swore out an affidavit to the effect that no such lien existed. The proof is that the claim due the mechanic was for work done in the construction of plaintiffs' mill. The lien did not exist as it could under the statute have effected only the products of the mill. The defendant's refusal had therefore no legal ground upon which it could rest, even if the affidavit was not in compliance with his request.

David Robertson testifies that defendant refused to accept further deliveries because the Parish of Pointe Coupee was then menaced with high water. Defendant denies that. As we read the record the fear of the overflow we think was the reason which prompted the refusal by defendant to pay. The fact is that defendant had under the agreement the right to stop further deliveries of lumber at his option, and in sending the note to plaintiff to cease delivery, he merely exercised the privilege with which he was invested under the terms of his contract. Plaintiffs had a similar right and acting in compliance with the note, stopped further delivery, of which defendant has no legal cause to complain, and no ground for a reconventional demand.

The court properly rendered judgment for plaintiffs for $367.59, after making correct deductions.